**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANTHONY WALLACE, | Case No.: 2:25-cv-02297-APG-EJY |
| Plaintiff | **Order (1) Granting Defendants' Motion for Leave to File Supplemental Authority; (2) Denying the Motion for Judicial Notice; (3) Denying the Motion to Strike as Moot; (4) Granting in Part Plaintiff's Motion to Amend; (5) Denying Defendants' Motion to Dismiss as Moot; and (6) Ordering Supplemental Briefing on the Motions for Injunctive Relief** |
| v. | |
| PENNYMAC LOAN SERVICES, LLC, et al., | |
| Defendants | |
| | [ECF Nos. 6, 24, 27, 33, 39, 44] |

Plaintiff Anthony Wallace sues PennyMac Loan Services, LLC, along with PennyMac CEO David Spector and CFO Daniel Perotti, for claims associated with a loan.  In 2020, Wallace obtained a mortgage loan from PennyMac that was secured by a deed of trust on Wallace's property located at 9605 Stoney Mesa Court in Las Vegas.  He has not made any monthly loan payments since the September 1, 2025 payment was due. ECF No 48-4 at 3.  In November 2025, Wallace filed this suit, asserting various alleged irregularities with the loan and the defendants' conduct. ECF No. 1.

The defendants moved to dismiss the complaint on numerous grounds, which Wallace opposed.  Additionally, the defendants asserted in their reply to their motion to dismiss that Wallace relied on fake cases to support his response brief. ECF No. 17 at 2.

After briefing on the motion to dismiss was complete, the defendants moved for leave to file supplemental authority in the form of a decision by another judge in this district who sanctioned an attorney for using fake case citations. ECF No. 24.  Wallace opposed the motion,

arguing it has nothing to do with the substantive claims at issue and is aimed at "improperly prejudicially influenc[ing] the Court." ECF No. 26 at 2. Wallace stated that the defendants "do not allege that Plaintiff relied on non-existent cases; they merely dispute the interpretation or application of legitimate authorities that exist in the record." *Id.*

Wallace later filed a motion for judicial notice along with a "memorandum in support of core legal principles." ECF No. 27. The defendants moved to strike this document under Federal Rule of Civil Procedure 12(f) because it requests judicial notice of legal arguments rather than facts and Wallace's opportunity to raise those arguments was in his response to the motion to dismiss. ECF No. 33. Alternatively, they opposed it, asserting that Wallace's complaint fails to state a claim regardless of the newly cited authorities. Wallace responded that Rule 12(f) applies to pleadings, not a motion. He also asserted that he is not asking the court to accept disputed facts as true, he is asking the court to take judicial notice of relevant legal authorities. He asserted the defendants have not been prejudiced by the filing. Finally, he argued that if I am not inclined to consider his motion, the proper remedy is to deny it, not strike it.

On February 26, 2026, PennyMac, through its trustee MTC Financial Inc., recorded a notice of breach and election to sell the property due to Wallace's default under the deed of trust. ECF No. 48-3 at 2. That prompted Wallace to file emergency motions for a temporary restraining order (TRO) and preliminary injunction to block the sale. ECF Nos. 39; 40; *see also* ECF No. 44 (requesting an emergency hearing on the TRO and preliminary injunction motions). I ordered the defendants to respond to the TRO motion by March 17 and Wallace to reply by March 19. ECF No. 47. The defendants timely filed their oppositions, and Wallace timely filed his reply. ECF Nos. 48; 50; 51. Wallace also moved to amend his complaint, which the defendants opposed. ECF Nos. 43; 49.

I grant the defendants' motion for leave to file supplemental authority. I deny Wallace's motion for judicial notice and deny as moot the defendants' motion to strike. I grant in part Wallace's motion to amend the complaint and deny as moot the defendants' motion to dismiss because it is directed at the original complaint. Finally, I order the parties to file supplemental briefs on Wallace's motions for injunctive relief.

**I.  I grant the motion for leave to file supplemental authority (ECF No. 24).**

Under Local Rule 7-2(g), a party may not file supplemental authorities without the court's leave "granted for good cause." The defendants have good cause to bring to my attention another judge in this district sanctioning counsel for providing fake caselaw citations because the defendants assert that Wallace has likewise presented fake case citations. Although Wallace contends the defendants do not accuse him of presenting fake cases, they do. In their reply brief, the defendants identified four fake cases related to Wallace's RESPA and fraudulent inducement claims. ECF No. 17 at 3, 7. And while the defendants acknowledge that two other cases exist, they assert that Wallace quoted language from those cases that does not exist. *Id.* at 5. Thus, the supplemental authority is pertinent to issues before the court, and I grant the motion for leave to file it.

Wallace has cited to fake case authority as follows:

1. "Shapiro v JPMorgan Chase & Co., No. 1:13-cv-09764-PGG, 2014 WL 1224546, at 5 (S.D.N.Y. Mar. 24, 2014)." ECF No. 13 at 6. The case citation does not bring up a case by that name. A search of the Southern District of New York's docket shows that case number is not associated with any case.

2. "Bally v. Home Loan Servicing, LP, No. 2:09-cv-02445-MCE-KJM, 2011 WL 867568, at 4 (E.D. Cal. Mar. 10, 2011)." ECF No. 13 at 6. The case citation does not bring up a

3

case with that name, and the Eastern District of California case number is assigned to a different case.

3.  "Boyle v. Bank of America, N.A., No. 2:13-cv-02021-APG-VCF, 2015 WL 1321435, at 6 (D. Nev. Mar. 24, 2015)." ECF No. 13 at 4.  The case citation does not bring up a case by that name, and that case number is assigned to a different case in this court.

4.  "Holmes v. Countrywide Financial Corp., No. 2:10-cv-00333-RCJ-PAL, 2010 WL 11597538, at 3 (D. Nev. Dec. 16, 2010)." ECF No. 13 at 5.  The case citation does not bring up a case by that name, and that case number is assigned to a different case in this court.

5.  Wallace also cited at least one fake case in his reply brief, which was filed after the defendants had already notified Wallace that some of his other cases were fake. *See* ECF No. 51 at 7 (citing "Pasillas v. HSBC Bank USA, N.A., No. 2:12-cv-01107, 2013 WL 3873227, at 5 (D. Nev. July 24, 2013)," but the citation does not bring up a case by that name and the case number is assigned to a different case in this court).

Additionally, Wallace has cited two cases that exist but the quotations he presented are not in those cases.  Wallace purports to quote *Weingartner v. Chase Home Finance, LLC*, 702 F. Supp. 2d 1276, 1288 (D. Nev. 2010) as stating that fiduciary duties may arise from special circumstances including "(1) reliance by one party on the other, (2) exercise of trust and confidence by one party in the other, or (3) an agreement by the servicer to act primarily for the benefit of the borrower." ECF No. 13 at 3 (quotations omitted).  *Weingartner* is a real case at that citation, but it does not contain the quoted language.  Similarly, Wallace represents that *Jolley v. Bank of America, N.A.*, 213 Cal. App. 4th 872, 905 (2013) states that a "loan servicer can owe a fiduciary duty when it assumes additional responsibilities beyond mere payment processing, such as handling escrow accounts or providing financial advice." ECF No. 13 at 3 (quotations

omitted).   A case named *Jolley* exists at that case citation, but the case is *Jolley v. Chase Home Finance, LLC* and it does not contain the quoted language.

When a party presents a filing to a court, the party certifies "that to the best of the [party's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law." FRCP 11(b).  This imposes an "affirmative duty of investigation . . . as to law . . . before motions are filed." *Golden Eagle Distrib. Corp., v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986).  This extends to attorneys and pro se litigants alike. FRCP 11(b).  "A fake opinion is not existing law, and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law.  An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Whiting v. City of Athens Tenn.*, No. 24-5918, --- F.4th ----, 2026 WL 710568, at *3 (6th Cir. Mar. 13, 2026) (quotations omitted).

There has been a rise in fake authority cited in briefs, usually as the result of using generative AI software, like ChatGPT, to draft pleadings. *Chavez-DeRemer v. NAB, LLC*, No. 2:21-CV-00984-JAD-EJY, 2025 WL 2308676, at *3 (D. Nev. Aug. 11, 2025).  Generative AI often invents fake cases and legal precedent in its drafting, and using it is no excuse for not verifying the veracity of citations. *See Whiting*, 2026 WL 710568, at *4 ("Citing even a single fake case can be sanctionable because no brief, pleading, motion, or any other paper filed in any court should contain any citations—whether provided by generative AI or any other source—that a lawyer [or pro se party] has not personally read and verified." (simplified)).  Citing fake legal authority is not harmless.  It wastes the other parties' and the court's resources trying to track down the nonexistent cases. *Id.* at *9 ("Citing fake cases unnecessarily burdens the court and the

taxpayers, so courts can and should fine the offending lawyers to reimburse the court for its time." (simplified)).  And it "can harm the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and the reputation of a party attributed with fictional conduct." *Id.* at \*4 (simplified).

Going forward, Wallace is reminded of his duty under FRCP 11(b)(2) and that citing fake cases drafted by generative AI violates this rule.  Failure to comply in the future may result in sanctions, such as an order to pay a penalty into court or nonmonetary sanctions, such as striking claims or defenses. FRCP 11(c)(4).

**II.  I deny the motion for judicial notice (ECF No. 27) and deny the motion to strike (ECF No. 33) as moot.**

Wallace moves for me to take judicial notice of various legal principles.  The defendants move to strike the motion as an improper request for judicial notice.

I deny Wallace's motion because he should argue his points of law in a motion, response, or reply he files, and not as a separate motion to set forth what he views as relevant legal principles.  Wallace requests that I consider the cited authorities when ruling on the defendants' motion to dismiss, but his opportunity to bring those authorities to my attention was in his response to the motion to dismiss.  Additionally, the motion to dismiss is now moot.  I therefore deny Wallace's motion for judicial notice.  I deny as moot the defendants' motion to strike because I deny Wallace's motion for judicial notice.

/ / / /

/ / / /

/ / / /

6

**III.  I grant in part the motion to amend (ECF No. 43) and deny the motion to dismiss (ECF No. 6) as moot.**

Wallace moves to amend and attaches a proposed second amended complaint. ECF No. 43-1.  The defendants oppose, arguing amendment is futile and Wallace is repeatedly amending to prolong the proceedings and stave off foreclosure.

I must "freely give leave" to a plaintiff to amend his complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  I am to apply this policy "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).  I consider "five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

Wallace moved for leave to amend the complaint approximately four months after filing his first complaint, so there is no undue delay.  Although he made other attempts to amend the complaint, this is the first time he has done so properly by seeking leave to do so and attaching the proposed amendment.  There is no prejudice to the defendants because they responded to the motions for injunctive relief as if the amended complaint were the operative pleading. *See* ECF No. 48 at 4-7.  And the assertion that Wallace is seeking amendment in bad faith to delay the foreclosure does not have much force where Wallace is already seeking to enjoin the sale through a separate motion.

Thus, the only reason to deny amendment is if it would be futile.  "Under futility analysis, dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Corinthian Colleges*, 655 F.3d at 995 (simplified).  I should grant leave to amend "if the deficiencies can be cured with additional allegations that are

7

consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *Id.* (simplified).  I address each claim to determine whether the proposed amendment would be futile and whether further amendment is needed.

### A.  Truth in Lending Act (TILA)

Wallace's amended complaint alleges all the defendants violated TILA by not extending him the loan proceeds either directly or through credits associated with him, failing to produce documentation showing he received the loan proceeds in some fashion, failing to properly assign the deed of trust, and failing to provide evidence that they are the holders of the original promissory note or that the note is properly endorsed to PennyMac. ECF No. 43-1 at 3-4, 7-8. He alleges this violates TILA because the defendants have not identified the creditor's identity and the transaction's material terms. *Id.* at 8.  He alleges the individual defendants are liable under 12 U.S.C. § 503 and as control persons under TILA. *Id.*

The defendants argue that this claim is futile because it is untimely.  They assert that TILA claims must be brought within one year of the alleged violation, but Wallace's loan originated in November 2020, and he did not file this action until November 2025.  They also argue that the individual defendants (Spector and Perotti) are not "creditors," so this claim fails against them.  And they contend that although Wallace invokes 12 U.S.C. § 503 to assign individual liability to Spector and Perotti, that statute applies only to banks, not a loan servicer like PennyMac.  The defendants also assert that § 503 applies only to violations of certain statutory provisions, none of which is at issue here.

In reply, Wallace argues that equitable tolling may apply where a defendant conceals its identity or the transaction's true nature.  He contends that his TILA claim is relevant to his arguments about who is the true party in interest capable of foreclosing on the property.

Wallace's TILA claim is subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). The limitation period begins "from the date of the occurrence of the violation." *Id.* Wallace alleges the defendants violated § 1638(a) by not disclosing, among other things, the identity of the creditor. However, Wallace's loan originated in November 2020, so any violation related to loan origination is time-barred because Wallace did not bring suit until November 2025. ECF Nos. 1; 43-1 at 3; 48-1 at 3. Likewise, to the extent Wallace's TILA claim is based on the assignment from MERS to PennyMac in September 2024, his claim is still untimely. ECF Nos. 1; 43-1 at 4; 48-2 at 2.

Equitable tolling may apply "in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (discussing equitable tolling in the context of a TILA claim) (quotation omitted). But Wallace has not explained why he was prevented from bringing his TILA claim earlier. Although Wallace refers to the identity of the creditor being concealed, PennyMac is identified as the lender on the note, the deed of trust, the notice of breach and election to sell, and the affidavit attached to the notice of breach. *See* ECF Nos. 43-1 at 24; 49-1 at 4; 49-3 at 2, 4. It is thus unclear what he believes has been concealed about the creditor's identity. And it is unclear what he means about the nature of the transaction being concealed. It may have something to do with his assertion that he has not been credited with the loan funds, but he does not state when he discovered facts that enabled him to bring a TILA claim. Because Wallace's TILA claim is untimely, the proposed amendment to add this claim is futile against any defendant. I therefore deny leave to amend to add this claim as alleged in the proposed amended complaint.

/ / / /

9

## B. Fair Credit Reporting Act (FCRA)

In the proposed amended complaint, Wallace alleges PennyMac and the individual defendants violated FCRA by failing to conduct a reasonable investigation and continuing to furnish inaccurate information to credit reporting agencies (CRAs) after he disputed the accuracy of the reported information with the CRAs, who, on information and belief, advised the defendants of Wallace's dispute. ECF No. 43-1 at 9.

The defendants argue that this proposed amendment is futile because Wallace does not identify what account was reported inaccurately, what the inaccuracy was, what information he disputed, with which CRA he filed a dispute, or how the defendants' investigation was deficient. Additionally, they argue that Spector and Perotti cannot be liable under FCRA because they are not furnishers of information under that statute.

FCRA "imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). As relevant here, 15 U.S.C. § 1681s-2(b) provides that a furnisher, upon receiving notice that a consumer disputes the accuracy of information provided to a CRA, shall conduct an investigation regarding the disputed information, review all relevant information provided by the CRA, and report the results of its investigation to the CRA. FCRA also requires that, if the investigation finds incomplete or inaccurate information, the furnisher must report the results to all other CRAs that it furnished that information to and modify, delete, or permanently block reporting the disputed information that is inaccurate, incomplete, or unverifiable. 15 U.S.C. § 1681s–2(b)(1)(D) and (E). "These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman*, 584 F.3d at 1154.

10

To state a FCRA claim, a plaintiff must plausibly allege that: (1) he found an inaccuracy in his credit report; (2) he notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s–2(b)(1)(A)-(E). *See id.* "An item on a credit report can be incomplete or inaccurate . . . because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012) (simplified). The plaintiff bears the burden of showing that the investigation was unreasonable. *See Gorman*, 584 F.3d at 1163; *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).

Wallace's proposed amended complaint avers that he "disputed the accuracy and legitimacy of the reported debt obligation" with CRAs, but he does not identify with which agencies or when he did so. ECF No. 43-1 at 6. He does not identify what the inaccuracy or illegitimacy is, nor does he state what he told the CRA about the alleged inaccuracy or illegitimacy. *See Gorman*, 584 F.3d at 1157 ("The pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."). He does not state why any investigation was unreasonable other than that the defendants allegedly continued to report inaccurate information. In sum, Wallace's conclusory allegations fail to plausibly allege a violation.

Additionally, Wallace does not plausibly allege why Spector and Perotti would be liable under FCRA. Indeed, the case he cites suggests that they are not proper defendants. *See Owens v. Cent. Tr. Bank*, No. 6:13-CV-03433-MDH, 2014 WL 5716762, at *3 n.5 (W.D. Mo. Nov. 5, 2014) ("As stated in the Court's prior order, a 'furnisher' is 'an entity that furnishes information

11

relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.' 12 C.F.R. § 717.41(c). The individual defendants are not 'entities' and the Second Amended Complaint does not plausibly infer that the individual defendants furnished credit information to the consumer reporting agencies."). I therefore deny leave to amend to add this claim as alleged in the proposed amended complaint.

### C. Violation of Nevada Revised Statutes § 107.510

Wallace's proposed amended complaint asserts this claim against PennyMac and MTC. ECF No. 43-1 at 9. He alleges that PennyMac did not comply with Nevada Revised Statutes (NRS) § 107.510(2), which requires a mortgagee on a residential mortgage loan to "contact the borrower in person or by telephone to assess the borrower's financial situation and to explore options for the borrower to avoid a foreclosure sale." If the mortgagee does not satisfy subsection (2), it can attempt other means to fulfill its duty to contact the borrower before commencing foreclosure. NRS § 107.510(5). A recorded notice of default and election to sell must "contain a declaration that the mortgage servicer has contacted the borrower as required by subsection 2, has attempted to contact the borrower as required by subsection 5 or that no contract was required." NRS § 107.510(6).

Wallace's proposed amended complaint alleges PennyMac's declaration in support of the notice of default is "a boilerplate, checkbox form that fails to provide specific factual detail regarding any alleged contact with" him. ECF No. 43-1 at 11. He states "[u]pon information and belief, no meaningful contact occurred as required by NRS 107.510(2)." *Id.*

The defendants argue this claim is futile because the statute does not require the affidavit to be in any particular form or to contain the details Wallace identifies. They note that Wallace does not allege that PennyMac did not contact him, instead asserting that any contact was not

"meaningful." But, they argue, the statute does not require meaningful contact. Alternatively, they argue that substantial compliance with the statute is all that is required, and they met that burden. Finally, they assert Wallace cannot show prejudice from any technical violation because the foreclosure sale has not occurred and he can pursue foreclosure alternatives during the statutory 90-day period following a notice of default. Wallace replies that Nevada's Homeowner's Bill of Rights was meant to "mandate meaningful, substantive contact – not technical, checkbox compliance." ECF No. 51 at 7.

I deny leave to amend this claim because Wallace has not plausibly alleged a violation of NRS § 107.510(2) or (6). The recorded notice of breach contains the required affidavit that indicates that the "mortgage servicer tried with due diligence to contact the borrower pursuant to NRS § 107.510(5) in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." ECF No. 48-3 at 7. The statute does not dictate a particular form for the affidavit, and it does not prohibit the use of a form that allows the mortgage servicer to fill in a circle to indicate which of several options it employed to comply with the statute.

Wallace does not allege that PennyMac never tried to contact him. Instead, he asserts the contact must be "meaningful." But it is unclear what he means by this assertion. He does not explain what was not meaningful about the contacts or attempted contacts PennyMac made. Section 107.510(2) describes what must occur if contact is made, and subsection (5) describes what the servicer must do if it has not contacted the borrower under subsection (2). Wallace does not identify what statutory requirement PennyMac has failed to meet. Consequently, I deny leave to amend to add this claim as alleged in the proposed amended complaint.

////

////

13

**D. Failure of Consideration and Declaratory Relief**

The proposed amended complaint sets forth separate claims for "failure of consideration" and declaratory judgment. ECF No. 43-1 at 9-10, 12. Wallace asserts the "failure of consideration" claim against PennyMac and MTC and alleges they lack authority to foreclose on the property because the loan, which the deed of trust secures, was not supported by consideration. Specifically, he alleges that he "did not receive actual loan proceeds, funds, or credits traceable to Defendants." ECF No. 43-1 at 10. He asserts his declaratory relief claim against all defendants and seeks declarations on: (1) whether the defendants are the lawful holders of the promissory note; (2) whether the assignment of the deed of trust from MERS to PennyMac was valid; (3) whether MTC was properly appointed as successor trustee; (4) whether the loan transaction fails for lack of consideration; (5) whether the defendants violated TILA and FCRA; and (6) whether the defendants complied with Nevada's pre-foreclosure requirements. ECF No. 43-1 at 12.

PennyMac argues that amendment to add the failure of consideration claim is futile because this is a defense to a breach of contract claim, and Nevada law does not recognize failure of consideration as a standalone cause of action. Similarly, PennyMac argues that declaratory relief is a remedy, not an independent cause of action where no claim otherwise exists. PennyMac asserts that because all of Wallace's other claims fail, so does his declaratory relief claim.

The Supreme Court of Nevada has characterized a failure of consideration as an affirmative defense. *See St. James v. Diversified Com. Fin. Corp.*, 714 P.2d 179, 180 (Nev. 1986) ("Appellants answered, setting forth as an affirmative defense failure of consideration . . . ."); *Rocky Mountain Powder Co. v. Hamlin*, 310 P.2d 404, 406 (Nev. 1957) ("As between the

maker and the payee of a promissory note, absence or failure of consideration is available as a defense."). There does not appear to be a standalone claim for failure of consideration. Thus, I deny leave to amend to assert that claim.

However, Wallace also seeks to assert a declaratory relief claim to request a declaration about whether the loan transaction fails for lack of consideration. The Declaratory Judgment Act allows federal courts to provide the remedy of a declaratory judgment in a case involving an actual controversy falling within the federal court's subject matter jurisdiction. *See* 28 U.S.C. § 2201(a). In such a case, "the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant." *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 Fed. Appx. 398, 400-01 (5th Cir. 2011) (unpublished); *see also Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990) ("Since it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action."). The underlying claim here would be PennyMac's breach of contract claim that Wallace breached the note by failing to make payments. Thus, Wallace properly may seek a declaration that he owes no duty to make those payments because the contract fails for lack of consideration.

Because PennyMac makes no other argument for why Wallace's declaratory relief claim would be futile, I allow it to proceed. Thus, I grant Wallace's motion to amend to assert his declaratory relief claim seeking declarations about: (1) whether the defendants are the lawful holders of the promissory note; (2) whether the assignment of the deed of trust from MERS to PennyMac was valid; (3) whether MTC was properly appointed as successor trustee; and

(4) whether the loan transaction fails for lack of consideration.  However, I deny leave to amend to seek declarations about whether the defendants violated TILA, FCRA, or Nevada's pre-foreclosure requirements because I have denied Wallace leave to amend to add those claims and any declaratory relief claim would be duplicative of the substantive claims.

I direct the clerk of court to detach and file separately the second amended complaint, and that is now the operative complaint in this matter.  Because it is the operative complaint, I deny the defendants' motion to dismiss (ECF No. 6) as moot because it is directed at the original complaint. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

Finally, if Wallace wants to amend his TILA, FCRA, and NRS § 107.510 claims, he must file a motion to amend and attach to that motion a proposed amended complaint that corrects the deficiencies identified in this order.  Additionally, if Wallace seeks to amend again, I suggest Wallace review the defendants' briefs related to the motion to dismiss, the motion to amend, and the motions for injunctive relief.  If Wallace does not move to amend again, the case will proceed on Wallace's declaratory relief claim only.

**IV.  I deny the motions for injunctive relief in part because Wallace is not likely to succeed on the merits of his TILA, FCRA, and NRS § 107.510 claims, but I direct supplemental briefing on whether Wallace's likelihood of success or serious questions on the merits of the declaratory relief claim.**

Because I have denied Wallace leave to amend as to his TILA, FCRA, and NRS § 107.510 claims, he is not likely to succeed on the merits of those claims.  Even if I considered those claims, the TILA claim is not likely to succeed because it is time-barred.  The FCRA claim is not likely to succeed because although Wallace avers that he filed a dispute with CRAs, he does not identify which agencies or when he did so. ECF No. 41 at 2.  He does not identify what

he told the CRA the alleged inaccuracy was. He states only that he "disputed the debt," and he did not provide me with the dispute letters. *Id.* He does not state why any investigation was unreasonable other than that the defendants allegedly continued to report inaccurate information. His conclusory statements are insufficient to support the extraordinary injunctive relief he requests. *Winter*, 555 U.S. at 22 (stating that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). Additionally, it is unclear why a FCRA violation would support enjoining the foreclosure sale as opposed to potential damages for inaccurate credit reporting. And the NRS § 107.510 claim fails because Wallace has not shown PennyMac violated the statute's requirements.

As to the declaratory relief claim for failure of consideration, the parties have not adequately addressed various issues associated with that claim, so I order supplemental briefing. First, Wallace has not addressed the warranty deed he issued to The Strategic-Moor Non-Statutory Private Irrevocable Trust purporting to transfer the property for $10. ECF No. 6-3. This warranty deed raises numerous questions that Wallace must address in supplemental briefing, specifically: (1) does he have standing to challenge a foreclosure on the property if he no longer owns it; (2) should The Strategic-Moor Non-Statutory Private Irrevocable Trust be joined as a party to this case; (3) is this purported transfer a breach of the deed of trust; and (4) how does he reconcile this warranty deed with his statements in his affidavit in support of the TRO motion that he is "the owner and resident of" the property at issue. ECF No. 41 at 1.

Second, Wallace must address issues surrounding his challenge to the failure of consideration. Although Wallace asserts that he has not received the loan funds, he admits he signed the note, and it appears he paid on the loan for years until recently. Wallace must address: (1) why he obtained the loan (i.e., was it a purchase money loan by which he bought the

property or a home equity loan for some other purpose); (2) if he never received the loan proceeds or credit for the loan proceeds, why did he pay on the loan for years and why did he decide to stop paying on the loan in 2025; and (3) why does he contend that so-called "bookkeeping entries" are insufficient consideration if those bookkeeping entries reflect the satisfaction of another obligation (for example, another loan on the property or another obligation Wallace owed). ECF No. 41 at 2.  Wallace's opening brief must address these issues.

The defendants also have not adequately addressed the likelihood of success of Wallace's declaratory relief claim because they argued only that it cannot be a standalone claim.  Thus, the defendants must address, with evidence, Wallace's assertion that he "did not receive actual loan proceeds, funds, or credits traceable to Defendants." ECF No. 43-1 at 10.  For example, the defendants may provide escrow instructions or financial records showing how the loan proceeds either were transferred to him or credited for his benefit.  Additionally, the defendants have not addressed Wallace's other requested declarations regarding (1) whether the defendants are the lawful holders of the promissory note; (2) whether the assignment of the deed of trust from MERS to PennyMac was valid; and (3) whether MTC was properly appointed as successor trustee.  The defendants' opening brief must address these issues.

I will allow each side one response brief to address the issues raised in the other side's opening brief.

**V.  Conclusion**

I THEREFORE ORDER that plaintiff Anthony Wallace's motion to amend **(ECF No. 43) is GRANTED in part**.

I FURTHER ORDER the clerk of court to detach and file separately the second amended complaint (ECF No. 43-1).  That is the operative complaint in this case going forward and the

18

only claim that may proceed at this point is Wallace's claim for declaratory relief seeking declarations regarding (1) whether the defendants are the lawful holders of the promissory note; (2) whether the assignment of the deed of trust from MERS to PennyMac was valid; (3) whether MTC was properly appointed as successor trustee; and (4) whether the loan transaction fails for lack of consideration.

I FURTHER ORDER the defendants' motion to dismiss **(ECF No. 6) is DENIED as moot** because it is directed at the original complaint.

I FURTHER ORDER that the defendants' motion for leave to file supplemental authority **(ECF No. 24) is GRANTED**.

I FURTHER ORDER that plaintiff Anthony Wallace's motion for judicial notice **(ECF No. 27) is DENIED**.

I FURTHER ORDER that the defendants' motion to strike **(ECF No. 33) is DENIED as moot**.

I FURTHER ORDER the parties to file supplemental briefs addressing the issues identified in this order regarding plaintiff Anthony Wallace's motions for temporary restraining order and preliminary injunction (ECF Nos. 38, 40). The parties' opening briefs are due April 10, 2026. Response briefs are due April 24, 2026. No reply briefs are allowed absent further order of the court.

I FURTHER ORDER that plaintiff Anthony Wallace's motion for emergency hearing **(ECF No. 44) is DENIED without prejudice**.

DATED this 26th day of March, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

19