**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANTHONY WALLACE,

    Plaintiff

v.

PENNYMAC LOAN SERVICES, LLC, et al.,

    Defendants

Case No.: 2:25-cv-02297-APG-EJY

**Order Denying Plaintiff's Motions for Injunctive Relief**

[ECF Nos. 39, 40]

Plaintiff Anthony Wallace sues PennyMac Loan Services, LLC, along with PennyMac CEO David Spector and CFO Daniel Perotti, for claims associated with a loan. In 2020, Wallace obtained a mortgage loan from PennyMac that was secured by a deed of trust on Wallace's property located at 9605 Stoney Mesa Court in Las Vegas. He has not made any monthly loan payments since the September 1, 2025 payment was due. ECF No 48-4 at 3. In November 2025, Wallace filed this suit, alleging various irregularities with the loan and the defendants' conduct. ECF No. 1.

On February 26, 2026, PennyMac, through its trustee MTC Financial Inc., recorded a notice of breach and election to sell the property due to Wallace's default under the deed of trust. ECF No. 48-3 at 2. That prompted Wallace to file emergency motions for a temporary restraining order (TRO) and preliminary injunction to block the sale, which the defendants opposed.

The defendants moved to dismiss the complaint on numerous grounds, which Wallace opposed. Wallace also moved to amend. I granted Wallace's motion to amend, but the only claim that I allowed to proceed was for declarations regarding: (1) whether the defendants are the

lawful holders of the promissory note; (2) whether the assignment of the deed of trust from MERS to PennyMac was valid; (3) whether MTC was properly appointed as successor trustee; and (4) whether the loan transaction fails for lack of consideration. ECF No. 55 at 15-16.  I denied in part Wallace's motions for injunctive relief to the extent they were based on claims I dismissed. *Id.* at 16-17.

However, I directed the parties to file supplemental briefing on the portions of the declaratory relief claim that I allowed to proceed.  Specifically, I noted that Wallace had not addressed the warranty deed he issued to The Strategic-Moor Non-Statutory Private Irrevocable Trust purporting to transfer the property for $10. *Id.* at 17 (citing ECF No. 6-3).  So I directed him to address: (1) whether "he has standing to challenge a foreclosure on the property if he no longer owns it; (2) should The Strategic-Moor Non-Statutory Private Irrevocable Trust be joined as a party to this case; (3) is this purported transfer a breach of the deed of trust; and (4) how does he reconcile this warranty deed with his statements in his affidavit in support of the TRO motion that he is 'the owner and resident of' the property at issue." *Id.* (quoting ECF No. 41 at 1).

I also directed Wallace to address "issues surrounding his challenge to the failure of consideration." *Id.*  Specifically, I directed Wallace to address  "(1) why he obtained the loan (i.e., was it a purchase money loan by which he bought the property or a home equity loan for some other purpose); (2) if he never received the loan proceeds or credit for the loan proceeds, why did he pay on the loan for years and why did he decide to stop paying on the loan in 2025; and (3) why does he contend that so-called 'bookkeeping entries' are insufficient consideration if those bookkeeping entries reflect the satisfaction of another obligation (for example, another

loan on the property or another obligation Wallace owed)." *Id.* at 17-18 (quoting ECF No. 41 at 2).

I directed the defendants to address, "with evidence, Wallace's assertion that he 'did not receive actual loan proceeds, funds, or credits traceable to Defendants.'" *Id.* at 18 (quoting ECF No. 43-1 at 10). Additionally, I directed the defendants to address "(1) whether the defendants are the lawful holders of the promissory note; (2) whether the assignment of the deed of trust from MERS to PennyMac was valid; and (3) whether MTC was properly appointed as successor trustee." *Id.*

The parties filed their supplemental briefs. Wallace argues he has standing despite the transfer to the Trust because he is the trust's beneficiary and trustee. He asserts that joining the Trust is unnecessary because he adequately represents the Trust's interests. He contends that transferring the property did not violate the deed of trust because it was "for estate planning purposes and did not violate the 'due-on-sale' clause, which is an unreasonable restraint on alienation when, as here, the lender's security is not impaired." ECF No. 67 at 6. As for reconciling the quitclaim deed transferring the property to the Trust with his assertion that he is the property owner, he asserts that he is the trust beneficiary, so he "holds equitable title." *Id.* at 7.

Wallace states that the loan's purpose "was to purchase the Property as a primary residence" and that he made payments for years because he "initially believed the loan was funded properly through a series of internal transfers and credits that satisfied the prior mortgage." *Id.* He states that it was upon "researching the securitization of mortgage loans and reviewing his loan documents" that he "developed a good-faith belief that the transaction lacked the fundamental element of consideration," which he asserts is "the transfer of funds from the

3

named lender to him or on his behalf." *Id.* at 8. As for why the loan lacks consideration, Wallace argues that an "internal accounting entry, without an actual transfer of funds from the lender's assets, is not consideration." *Id.* He contends that PennyMac cannot meet its burden to show consideration unless it produces the original wet-ink promissory note with all endorsements and assignments.

PennyMac argues that the loan is supported by consideration because the funds were used to pay off a prior loan that was secured by a deed of trust on the property and that prior lien was extinguished for Wallace's benefit. It also argues that it is the original lender and is the current beneficiary under the deed of trust, so it is the holder of the note under Nevada law. PennyMac points to a recorded affidavit of authority to exercise the power of sale, which was signed under penalty of perjury, to confirm it has actual or constructive possession of the note, and it argues that Nevada law does not require it to produce the original wet-ink note. PennyMac also contends that Wallace lacks standing to complain about assignments of the deed of trust and, in any event, MERS is a valid beneficiary that may assign its beneficial interest in the deed of trust to the holder of the note. Finally, PennyMac contends that the deed of trust authorizes the lender or its successor to substitute a trustee at its discretion. PennyMac thus argues that Wallace is not likely to succeed on the merits, so I should deny his motions for injunctive relief. Alternatively, PennyMac requests a substantial bond if I intend to grant Wallace's motions.

I deny Wallace's motions for injunctive relief because he is not likely to succeed on the merits of any of his remaining requests for declaratory relief.

/ / / /

/ / / /

/ / / /

**I. Wallace does not have standing unless he amends to sue as trustee of the Trust.**

Wallace asserts that he has standing because he is the trustee and beneficiary of the Trust that owns the property.  This also explains his statements in his affidavit in support of the TRO motion that he owns the property even though the Trust is the owner of record.

Under Nevada law, the trustee is the real party in interest entitled to bring suit and defend on a trust's behalf. *Causey v. Carpenters S. Nev. Vacation Tr.*, 600 P.2d 244, 245 (Nev. 1979) ("It is the trustee, or trustees, rather than the trust itself that is entitled to bring suit.").  The Supreme Court of Nevada has "long recognized that "the trustees have the legal interest in the trust property, and, therefore, they are necessary parties in suits respecting such property." *In re Richard H. Goldstein Irrevocable Tr.*, 575 P.3d 72, 76 (Nev. 2025).[1]

Wallace did not state in his second amended complaint that he is suing in his capacity as trustee for the Trust.  However, if Wallace is the Trust's trustee, this problem can be cured by a simple amendment to clarify that Wallace is suing in his capacity as the Trust's trustee.  I grant Wallace leave to amend to make that change (but Wallace does not have leave to make any other amendments).  Accordingly, I will address the remainder of the parties' arguments on the assumption that Wallace can readily make that change.  I need not address whether the transfer of the property to the Trust breached the deed of trust because, regardless, Wallace has not shown a likelihood of success on the merits even if he amends to fix the standing problem.

---

[1] *See also* Nev. R. Civ. P. 17(a)(1)(E) (making "a trustee of an express trust" the real party in interest "without joining the person for whose benefit the action is brought"); Fed. R. Civ. P. 17(a)(1)(E) (same); *In re Tower Park Props., LLC*, 803 F.3d 450, 459 (9th Cir. 2015) (A "trust beneficiary is not the entity positioned to take legal recourse to protect the trust assets, unless the beneficiary is seeking only to enforce the terms of the trust."); Restatement (Third) of Trusts § 107(2)(b) (A.L.I. 2012) (explaining that a beneficiary may bring or defend suit where "the trustee is unable, unavailable, unsuitable, or improperly failing to protect the beneficiary's interest").

**II.  I deny Wallace's motions for injunctive relief because he is not likely to succeed on the merits of any of his remaining declaratory relief claims.**

To qualify for a temporary restraining order or a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

**A.  Wallace is not likely to succeed in showing a lack of consideration.**

PennyMac has presented evidence that Wallace's property was encumbered by a deed of trust securing a prior loan dated November 1, 2019.[2] ECF No. 63-2 at 3-5.  In November 2020, Wallace applied for a $419,718.00 loan to refinance his prior loan. ECF No. 63-3 at 2.  The November 28, 2020 note states that Wallace agreed to pay PennyMac $419,718.00 plus interest. ECF No. 63-4 at 2.  He also agreed to the deed of trust securing the note. ECF No. 63-5 at 3-5. PennyMac has presented evidence that the prior loan was paid off through the November 2020 loan's disbursements. ECF Nos. 63-6 at 2 (showing $406, 266.70 was paid to PennyMac); 63-7

---

[2] Wallace objects to PennyMac's exhibits based on hearsay.  However, I can consider hearsay when ruling on motions for injunctive relief. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).  Moreover, Wallace acknowledges that PennyMac's records generally would fall under the business records exception to hearsay in Federal Rule of Evidence 803(6). *See* ECF No. 71 at 2.  He argues the business records exception should not apply here because PennyMac created the records, so the records lack trustworthiness under Rule 803(6)(E).  Wallace has not shown the records are untrustworthy.  They are consistent with Wallace's own representations that he secured a loan and made payments on that loan for years.

at 2-3 (showing PennyMac's payoff amount for the prior loan was $406,266.70); 63-8 at 4 (showing the payoff of the prior loan as part of the new loan transaction); 63-9 at 3 (same); 63-12 at 2 (same); 63-10 (letter from PennyMac to Wallace stating that PennyMac "received funds that were applied to pay your loan in full, effective December 3, 2020"). Wallace concedes that he signed the Closing Disclosure that showed the funds would be distributed to pay off the prior loan. ECF Nos. 71 at 4; 63-8 at 4, 6.

Paying off another debt is sufficient consideration to support the new loan. *See Bradley v. Romeo*, 716 P.2d 227, 228 (Nev. 1986) ("[A]ntecedent debt flowing to a third party is sufficient consideration to support liability on a promissory note."); *McCall v. Carlson*, 172 P.2d 171, 179 (Nev. 1946) (stating that a conveyance of the property can be supported by "payment of an antecedent debt, or for any other valuable consideration"); *Pat Clark Sports, Inc. v. Champion Trailers, Inc.*, 487 F. Supp. 2d 1172, 1179 (D. Nev. 2007) ("[U]nder Nevada law, satisfaction of an antecedent debt constitutes fair consideration."). Wallace argues that the money must have first passed through his hands, but he cites no law to support that proposition and it is contrary to legal authority. PennyMac paid off a prior loan and thereby extinguished a lien on the property. Wallace thus received a benefit to support the new loan regardless of whether the funds were deposited into an account that he owned.[3] He therefore has not shown a likelihood of success on his request for a declaration that the loan fails for lack of consideration.

////

////

---

[3] Wallace asserts in a supplemental response brief that the prior loan was also never properly funded. ECF No. 71 at 4-5. But he did not allege that in his second amended complaint nor does he provide any evidence to support that suggestion. Wallace admits he obtained the loans to purchase the property, and he has not explained how he purchased the property if not through these loans.

**B. Wallace is not likely to succeed in showing that PennyMac is not a lawful holder of the note.**

PennyMac was the original lender and remains the lender. ECF Nos. 48-1 at 3-4; 48-3 at 4; 63-4 at 2.  PennyMac filed an affidavit under oath in connection with the notice of breach and election to sell that affirms it is in actual or constructive possession of the note. ECF No. 48-3 at 4-6.  Wallace's unsupported speculation that PennyMac may not be the note holder even though it has been the only lender associated with this loan since the loan's inception lacks any evidentiary basis.  He therefore is unlikely to succeed on the merits of this claim.

**C. Wallace is not likely to succeed in showing that the assignment from MERS to PennyMac was invalid.**

PennyMac argues that Wallace lacks standing to challenge the assignment of the deed of trust from MERS to PennyMac because he is not a party to the assignment.  Wallace asserts that he has standing because the assignment is void, not merely voidable.  He contends the assignment is void because "MERS, as a mere nominee with no beneficial interest in the underlying debt, lacked the authority to assign the Note." ECF No. 70 at 3.  Wallace also argues that the affidavit of authority attached to the notice of breach and election to sell is insufficient to establish that the note and deed of trust have been reunited to allow PennyMac to foreclose.  He contends that NRS § 107.085(2)(a) requires PennyMac to produce the original note before foreclosing.

Even if Wallace has standing to challenge the assignment from MERS to PennyMac, he is not likely to succeed on this claim.  To "foreclose [under Nevada law], the current beneficiary of the deed of trust and the current holder of the promissory note must be the same." *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 255 (Nev. 2012) (en banc).  Where, as here, a deed of trust

8

designates MERS as the beneficiary, "MERS is the proper beneficiary pursuant to the deed of trust," but "that designation does not make MERS the holder of the note." *Id.* at 259.  Instead, the consequence is that the note and deed of trust are  "effectively 'split'" at loan inception "because . . . an entity separate from the original note holder ([PennyMac]) is listed as the beneficiary (MERS)." *Id.* at 259.  "However, this split at the inception of the loan is not irreparable or fatal." *Id.*  Rather, "MERS, as a valid beneficiary, may assign its beneficial interest in the deed of trust to the holder of the note, at which time the documents are reunified." *Id.* at 260.  A new beneficiary can demonstrate that the previous beneficiary properly assigned its beneficial interest in the deed of trust by means of a signed assignment. *Leyva v. Nat'l Default Servicing Corp.*, 255 P.3d 1275, 1279 (Nev. 2011) (en banc).

PennyMac has presented evidence that in September 2024, MERS assigned the deed of trust "together with all liens, and any rights due or to become due thereon" to PennyMac. ECF No. 48-2.  Thus, even if the note and deed of trust were split at inception, they were reunified through this assignment.

Wallace's assertion that "MERS, as a mere nominee with no beneficial interest in the underlying debt, lacked the authority to assign the Note" is incorrect. ECF No. 70 at 3.  The deed of trust designated MERS as both the beneficiary under the deed of trust and as "nominee for Lender and Lender's successors and assigns." ECF No. 48-1 at 4.  The Supreme Court of Nevada has held that this language means that "MERS holds an agency relationship with [PennyMac] and its successors and assigns with regard to the note." *Edelstein*, 286 P.3d at 258.  The deed of trust states that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of [the] interests [granted under the deed of trust], including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender

9

. . . ." ECF No. 48-1 at 5. The Supreme Court of Nevada held that identical language in a deed of trust made MERS the lender's agent and as such, MERS "had authority to transfer the note on behalf of [the lender] and its successors and assigns." *Edelstein*, 286 P.3d at 258.

Wallace also argues that the affidavit of authority attached to the notice of breach and election to sell is insufficient to establish that the note and deed of trust have been reunited to allow PennyMac to foreclose. But as I stated earlier, his unsupported speculation does not rebut the affidavit signed under penalty of perjury.

Finally, Wallace contends that NRS § 107.085(2)(a) requires PennyMac to produce the original, wet-ink note before foreclosing. This claim is not in his second amended complaint. But even if I considered it, he cannot succeed. Section 107.085(2)(a) provides that the trustee cannot exercise a power of sale under § 107.080 unless the trustee serves the property owner with a notice described in § 107.085(3) 60 days before the sale date. Subsection (3)(b) requires the trustee to attach to the notice "a copy of the promissory note." This statute does not require the trustee or the lender to produce the original, wet-ink note, as Wallace asserts. By the statute's plain language, the trustee must send the property owner a copy. PennyMac has produced a copy of the note. ECF No. 63-4.

**D. Wallace is not likely to succeed in showing that MTC was not properly appointed as successor trustee.**

Wallace's argument that MTC was not properly appointed as trustee is premised on his assertion that PennyMac is not the lawful beneficiary. Thus, he is not likely to succeed on the merits of this claim either. In his supplemental response brief, he argues that "NRS 107.080 sets forth specific procedural requirements for the substitution of a trustee, including proper notice and recording." ECF No. 70 at 5. But Wallace does not identify what statutory provision

PennyMac and MTC have not satisfied with respect to the substitution of the trustee. He therefore is not likely to succeed on this claim.

**III.  Summary**

Wallace lacks standing to pursue his claims to protect the Trust's assets unless he amends to clarify that he is suing in his capacity as the Trust's trustee. I grant him leave to make that amendment only. Because that issue is easily resolved, I have addressed the parties' remaining arguments regarding Wallace's motions for injunctive relief. Wallace is not likely to succeed on any of his remaining claims, so I deny his motions.

**V.  Conclusion**

I THEREFORE ORDER that plaintiff Anthony Wallace's motions for a temporary restraining order and preliminary injunction **(ECF Nos. 39, 40) are DENIED**.

I FURTHER ORDER that plaintiff Anthony Wallace has leave to amend his second amended complaint only to clarify that he is suing in his capacity as trustee for The Strategic-Moor Non-Statutory Private Irrevocable Trust. Wallace does not have leave to change or add any other claims, parties, or allegations. **If Wallace does not file a third amended complaint making this change by May 15, 2026, I will dismiss this case for lack of standing.**

DATED this 7th day of May, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

11